# No. 24-60658

## In the United States Court of Appeals
## For the Fifth Circuit

NEXSTAR MEDIA, INCORPORATED, (DENVER HUB),
*Petitioner*,

V.

NATIONAL LABOR RELATIONS BOARD,
*Respondent*, and

NATIONAL ASSOCIATION OF BROADCAST EMPLOYEES &
TECHNICIANS – COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO,
*Intervenor*.

---

On Petition for Review and Cross-Application for Enforcement of an Order From
the National Labor Relations Board

NLRB Case No.: 27-CA-342707

---

**PETITION FOR REHEARING EN BANC
OF NEXSTAR MEDIA GROUP INCORPORATED**

---

Dean Kpere-Daibo
CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
680 Craig Road, Suite 400
St. Louis, Missouri 63141
dkdaibo@constangy.com
Tel. (314) 338-3740
*Counsel for Petitioner*

November 28, 2025

1

## CERTIFICATE OF INTERESTED PARTIES

*Case No. 24-60658, Nexstar Media Group, Inc. (Denver Hub) v. National Labor Relations Board.*

The undersigned counsel of record certifies the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that judges of this Court may evaluate potential disqualification or recusal:

1. Petitioner/Cross-Respondent Nexstar Media, Inc.'s ("Nexstar" or "Petitioner/Cross-Respondent") parent corporation is Nexstar Media Group.

2. The Respondent/Cross-Petitioner, National Labor Relations Board ("NLRB," "Board," or "Respondent/Cross-Petitioner"), is a federal agency.

3. Matthew S. Lomax, in his official capacity, is Regional Director for Region 27 of Respondent/Cross-Petitioner.

4. William B. Cowen, in his official capacity, is Acting General Counsel of Respondent/Cross-Petitioner.

5. Jennifer Abruzzo, in her former official capacity, was General Counsel for Respondent/Cross-Petitioner.

6. Isabel C. Saveland, in her official capacity, is Counsel for the General Counsel.

7. Lauren M. McFerran, in her former official capacity, was Chairperson of Respondent/Cross-Petitioner.

13791051v1

8. Gwynne A. Wilcox, in her former official capacity, was a member of Respondent/Cross-Petitioner.

9. Marvin E. Kaplan, in his official capacity, is Chairperson of Respondent/Cross-Petitioner.

10. David M. Prouty, in his official capacity, is a member of Respondent/Cross-Petitioner.

11. The United States of America appropriates funds and assumes the debts of Respondent/Cross-Petitioner.

12. National Association of Broadcast Employees & Technicians – Communications Workers of America, AFL-CIO ("NABET," the "Union," or "Intervenor") is the Intervenor in this matter.[1]

The undersigned counsel for Nexstar lists the following persons as attorneys of record:

1. Constangy, Brooks, Smith & Prophete, LLP is Counsel for Petitioner/Cross-Respondent.

2. Dean Kpere-Daibo is Counsel for Petitioner/Cross-Respondent.

3. Charles E. Pautsch is General Counsel for Petitioner/Cross-Respondent.

---

[1] For the purpose of this Certificate, Nexstar represents that NABET may have an interest in this matter on the basis of its intervention, without waiving any objections to NABET's status as an intervenor.

13791051v1

4. Ruth E. Burdick is Counsel to Respondent/Cross-Petitioner.

5. Usha Dheenan is Counsel to Respondent/Cross-Petitioner.

6. Jared Odessky is Counsel to Respondent/Cross-Petitioner.

7. Judiann Chartier is Counsel to the Intervenor.

8. Matthew Holder is Counsel to the Intervenor.

*/s/ Dean Kpere-Daibo*
Dean Kpere-Daibo
*Attorney of Record for*
*Nexstar Media, Inc.*

Dated: November 28, 2025

13791051v1

## RULE 35(b) STATEMENT

The panel granted enforcement to a Board Order finding that Nexstar committed an Unfair Labor Practice ("ULP") in violation of the National Labor Relations Act, 29 *U.S.C.* § 151, *et seq.* (the "Act"), by refusing to bargain with NABET.

The panel ruled only: "ENFORCED. *See* 5th Cir. R. 47.6." Panel Op. 1.

This ruling conflicts with decisions by the Supreme Court and the Fifth Circuit, as well as by the Sixth and Tenth Circuits, that forbid blind deference to the Board's legal conclusions and interpretations of the Act. *Loper Bright Enters. v. Riamondo*, 603 U.S. 369, 384-386, 400-401 (2024); *Hudson Inst. of Process Research, Inc. v. NLRB*, 117 F.4th 692, 700 (5th Cir. 2024); *see 3484, Inc. v. NLRB*, 137 F.4th 1093, 1103-1104 (10th Cir. 2025); *see further Rieth-Riley Constr. Co., Inc. v. NLRB*, 114 F.4th 519, 528-529 (6th Cir. 2024). There is no indication that the panel attempted to conduct the necessary *de novo* review before issuing its decision.

As the panel would not conduct (or was not willing to state one way or the other whether it conducted) the required, non-deferential, review, rehearing *en banc* is necessary to ensure that the Court meets its "province and duty…to say what the law is." *Marbury v. Madison*, 1 Cranch 137, 177 (1803); *see* THE FEDERALIST No.

13791051v1

78, at 525 (A. Hamilton) (the "interpretation of the laws" is "the proper and peculiar province of the courts").

13791051v1

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES ....................................................................2

RULE 35(b) STATEMENT..............................................................................................5

TABLE OF CONTENTS...................................................................................................6

TABLE OF AUTHORITIES ............................................................................................7

STATEMENT OF THE ISSUES.....................................................................................11

STATEMENT OF THE COURSE OF THE PROCEEDINGS & DISPOSITON
   OF THE CASE ..........................................................................................................11

STATEMENT OF THE FACTS .....................................................................................13

ARGUMENT ..................................................................................................................15

    I. Invocation of 5th Cir. R.47.6 is Not Dispositive...............................................15

    II. Non-Deferential Review by this Court is Required ...........................................16

    III.  The Relevant Legal Questions.........................................................................19

        A. Supervisory Status Under Section 2(11) of the Act..............................19

        B. The Failure to Investigate Taint .........................................................22

        1.  Prohibiting Litigation of Supervisory Taint Violates Due Process .......23

        2.  The Board's Rule Serves No Purpose Other Than to Prejudice
           Employers and Favor Labor Unions.....................................................27

        C. The Right to Refrain Under Section 7 of the Act..................................27

        D. Violation of Section 8(a)(1) & (5) of the Act and Interpretation
          and Application of Section 8(d) of the Act...........................................30

CONCLUSION ...............................................................................................................35

CERTIFICATE OF COMPLIANCE................................................................................36

CERTIFICATE OF SERVICE ........................................................................................37

13791051v1

**TABLE OF AUTHORITIES**

Cases

*3484 Inc. v. NLRB*, 137 F.4th 1093, 1103-1104 (10th Cir. 2025) ..........................17

*A.B.C. Liquors, Inc.*, 227 NLRB 1582, 1585 (NLRB 1977); ................................23

*Alaris Health at Blvd. E. v. NLRB*, 123 F.4th 107, 121 (3d Cir. 2024)....................18

*Am. Fed. Labor v. NLRB*, 308 U.S. 401, 411 (1940)................................................30

*Beasley v. Food Fair of N.C.*, 416 U.S. 653, 660 (1974) .................................19, 26

*Curtis v. Loether*, 415 U.S. 189, 196 (1974) ...........................................................33

*Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 574-575 (1990, Brennan, J., concurring")).........................................................33

*Desilu Productions, Inc.*, 106 NLRB 179, 182 (NLRB 1953) .....................22, 23, 27

*Dist. Hosp. Partners, L.P. v. NLRB*, 141 F.4th 1279, 1289 n. 2 (D.C. Cir. 2025) ..17

*Entergy Miss., Inc. v. NLRB*, 810 F.3d 287, 293 (5th Cir. 2015) ...........................20

*Garten Trucking LC v. NLRB*, 139 F.4th 269, 276 (4th Cir. 2025)........................16

*Georgia Craft Co.*, 120 NLRB 806 (NLRB 1958).....................................22, 23, 27

*Granfianciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989)......................................32

*H.K. Porter Co., Inc. v. NLRB*, 396 U.S. 99, 103-104 (1970)................................34

*Home Depot, U.S.A., Inc. v. NLRB*, Nos. 24-1406 & 24-1513, 2025 WL 3099879, at *7 (6th Cir. Nov. 6, 2025); ..................................................................17

*Hudson Inst. of Process Research, Inc.*, 117 F.4th at 700 ....................... 5, 16, 19-21

*Int'l Brotherhood of Elec. Workers v. NLRB*, 973 F.3d 451, 458 (5th Cir. 2020) ..18

*Int'l Union etc. v. Russell*, 356 U.S. 634, 641-643 (1958) .....................................20

*Int'l Union of Operating Eng'rs, Stationary Eng'rs, Local 39 v. NLRB*, 127 F.4th 58, 84 n. 14 (9th Cir. 2025) ....................................................................20

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 384-85 (2024).....5, 11, 16, 18, 21

*Marbury v. Madison*, 1 Cranch 137, 177 (1803) ...............................................5, 16

*MFS Sec. Corp. v. SEC*, 380 F.3d 611, 618 (2d Cir. 2004).....................................24

*Miller Plastic Prods., Inc. v. NLRB*, 141 F.4th 492, 503 (3rd Cir. 2025) ...............18

*NLRB v. Amalgamated Clothing Workers of Am., AFL-CIO, Local 990*, 430 F.2d 966, 972 (5th Cir. 1970)...............................................................................15

*NLRB v. Arkema, Inc.*, 710 F.3d 308, 316 (5th Cir. 2013) ........................................27

*NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112 (1956) ...................................29

*NLRB v. Claxton Mfg. Co., Inc.*, 613 F.2d 1364, 1365 (5th Cir. 1980)...................30

*NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5th Cir. 1969), *cert. denied* 429 U.S. 1092 (1977).................................................................................................28

*NLRB v. Handy Hardware Wholesale, Inc.*, 542 F.2d 935, 938 (5th Cir. 1976), *cert. denied* 431 U.S. 954 (1970)..................................................................................28

*NLRB v. Hood Mfg. Co.*, 941 F.2d 325, 332 (5th Cir. 1994)...................................30

*NLRB v. Ins. Agents*, 361 U.S. 477, 487 (1960) ......................................................34

*NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45 (1937) ..............................34

*NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 712-713 (2001)......................20

*NLRB v. McCarty Farms, Inc.*, 24 F.3d 725, 730 (5th Cir. 1994)...........................28

*NLRB v. Starbucks Corp.*, No. 23-1767, 2025 WL 3089798, at *9-19 (6th Cir. Nov. 5, 2025) .................................................................................................................17

*NLRB v. Sumter Plywood Corp.*, 535 F.2d 917, 920 (5th Cir. 1976)......................28

*Northeastern Univ.*, 218 NLRB 247 (NLRB 1975) ................................................23

*Oakwood Healthcare, Inc.*, 348 NLRB 686, 692 (NLRB 2006)............................20

*Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446 (1830).....................32

*Pittsburgh Plate Glass Co. v. NLRB*, 313 U.S. 146, 152 (1941)............................30

*Rieth-Riley Constr. Co., Inc. v. NLRB*, 114 F.4th 519, 528-529 (6th Cir. 2024) 5, 17

*River City Elevator Co., Inc.*, 339 NLRB 616 (NLRB 2003) ................................23

*Sears & Roebuck Co. v. San Diego Cty. District Council of Carpenters*, 436 U.S. 180, 205 (1978); .................................................................................................29

*S.E.C. v. Jarkesy*, 603 U.S. 109, 123 (2024).........................................................33

*Shepard v. NLRB*, 459 U.S. 344, 351 (1983).........................................................31

*Wal-Mart Stores, Inc. v. United Food and Commercial Workers Int'l Union*, 382 P.3d 1249, 1255, 1258 (Colo. App. 2016).........................................................28

*Withrow v. Larkin*, 421 U.S. 35, 46 (1976) ...........................................................24

*Zotos Int'l, Inc. v. Kennedy*, 460 F. Supp. 268, 278 (D.D.C. 1978)........................24

Statutes

29 *U.S.C.* § 151 ...........................................................................................12

*29 U.S.C.* § 151 .........................................................................................13

29 *U.S.C.* § 157 .........................................................................................13

29 *U.S.C.* § 158 (a)(1) & (5) .....................................................................12

Regulations

29 *C.F.R.* § 101.10(a)................................................................................33

29 *C.F.R.* § 101.11(a)................................................................................33

29 *C.F.R.* § 101.16(a)-(c) ..........................................................................33

Other

5th Cir. R. 47.6........................................................................................5, 15

*Fed. R. App. P.* 40(d)(1)(B) .........................................................................12

H.R. Rep. No. 245, 80th Cong., 1st Sess., p. 19 .......................................33

THE FEDERALIST No. 78, at 525 .....................................................................5

13791051v1

## STATEMENT OF ISSUES

1.      Whether the Panel conducted the full, non-deferential, and *de novo* review required by *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) and its progeny?

## STATEMENT OF THE COURSE OF
## PROCEEDINGS AND DISPOSITION OF THE CASE

On January 9, 2024, NABET filed a recognition ("RC") petition for a proposed bargaining unit of "[a]ll full and part-time shift leads, ingest leads, and master control operations" employed by Nexstar at its 100 East Speer Boulevard, Denver, Colorado facility.  [ROA.180].  NABET and Nexstar stipulated to certain facts regarding a Board election but disagreed as to the Section 2(11) supervisory status of Shift Leads ("SLs") and Ingest Leads ("ILs") and resulting supervisory taint. [ROA.17, 10:5-16; ROA.19-22, 12:19-15:1].  Although Nexstar followed proper procedures for the Board to investigate supervisory taint, the Board improperly proceeded with a hearing on February 7, 2024, after the Regional Director for Region 27 of the Board, Matthew S. Lomax ("RD"), prohibited a Hearing Officer from hearing evidence as to the Section 2(11) status of ILs. [ROA.21-22, 14:13-15:1; ROA.7-171; ROA.306; ROA.314].

The RD issued a Decision and Direction of Election ("DDE") on March 27, 2024.  [ROA.305-323].  As discussed below, the DDE interpreted and applied the Act.  [*Id.*].

11

An election was conducted on April 4, 2024, and Nexstar timely filed ten (10) objections to the election, supported by an offer of proof. [ROA.327-365]. The Board refused to hold a hearing on Nexstar's objections, and the RD issued a Decision and Certification of Representative ("DCR") on April 29, 2024. [ROA.379-392]. As discussed below, the RD interpreted and applied the National Labor Relations Act, 29 *U.S.C.* § 151, *et seq.* (the "Act").

Nexstar filed a request for review of the DCR with the Board. [ROA.393-397]. Although NABET was fully ware that the request for review was pending, it filed an unfair labor practice charge ("ULP") on May 21, 2024, alleging violations of Sections 8(a)(1) & (5), 29 *U.S.C.* § 158(a)(1) & (5) on May 21, 2024. [ROA.399-400]. On August 28, 2024, *before* the request for review was decided, a complaint regarding the ULP was issued. [ROA.491-498; ROA.507-510]. The Board summarily denied Nexstar's request for review on September 19, 2024. [ROA.542]. A Decision and Order granting NABET's ULP was issued on December 16, 2024. [ROA.571-574].

A petition for review to this Court was timely filed on December 27, 2024. This matter was fully briefed, and the Panel decision was issued on October 15, 2025. [ECF No. 88]. As the Board is a "United States agency," this petition, filed this 28th day of November 2025, is timely pursuant to *Fed. R. App. P.* 40(d)(1)(B).

## STATEMENT OF FACTS

This statement of facts pertains to legal determinations, *i.e.*, those which interpret and apply the Act, reached by the Board. These legal determinations require full, fair, and non-deferential review by this Court.

*First*, Section 7 of the Act, 29 *U.S.C.* § 157, establishes that only "employees" enjoy the right to bargain collectively through representatives of their choosing. Correspondingly, employers are only required to "bargain collectively with representatives of [their] employees." 29 *U.S.C.* § 158(a)(5). Section 2(3) of the Act, 29 *U.S.C.* § 152(3) defines "employee;" however, Section 2(11) of the Act, 29 *U.S.C.* § 152(11), expressly excludes "supervisors" from the Act's protections.

On April 29, 2024, the RD issued the DCR, which interpreted and applied the above sections of the Act. The Board summarily denied Nexstar's request for review of the DCR on September 19, 2024. [ROA.542].

*Second*, Section 7 of the Act, 29 *U.S.C.* § 157, establishes:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid and protection, ***and shall have the right to refrain from any and all such activities***…

*(emphasis supplied)*.

On April 29, 2024, the RD made a legal determination that NABET did not violate Section 7 of the Act by engaging in conduct affecting the outcome of the election (although the RD curiously omitted any reference to the part of the Act he was interpreting and applying). [ROA.379-392]. The Board summarily denied Nexstar's request to review the RD's interpretation and application of the Act on September 19, 2024. [ROA.542].

*Third*, Sections 8(a)(1) & (5) of the Act, 29 *U.S.C.* § 158(a)(1) & (5), establish it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees" in their exercise of their rights under the Act by "refus[ing] to bargain collectively with the representatives of [their] employees." On May 21, 2024, NABET alleged that Nexstar violated Sections 8(a)(1) & (5) of the Act by refusing to bargain. [ROA.399-400]. On December 16, 2024, former Chairperson McFerran, former member Wilcox, and member Prouty interpreted and applied Sections 8(a)(1) & (5) of the Act by finding that Nexstar committed an unfair labor practice. [ROA.571-574].

The Panel made no effort to conduct (or no effort to state that it conducted) the requisite non-deferential, *de novo* review of these decisions interpreting and applying the Act. Panel Op. 1. Instead, the Panel ruled only: "ENFORCED. *See* 5th Cir. R. 47.6." [*Id.*].

14

## ARGUMENT

### I.  Invocation of 5TH CIR. R. 47.6 is Not Dispositive

As is relevant here, FIFTH CIR. R. 47.6 establishes that the Court may affirm or enforce without opinion only under the following enumerated circumstances: "that the order of an administrative agency is supported by substantial evidence on the record as a whole" and "no reversible error of law appears." In adopting the predecessor to the 5TH CIR. R. 47.6—5TH CIR. R. 21—this Court recognized:

> …[T]he Court faces a heavy obligation.  For as a part of the time-proved hierarchical system, this Court and each of its Judges must constantly bear in mind the distinctive role of an appellate court…Foremost, we are court of review and in the Federal system a court of review of cases in which appeal is nearly always a matter of right…we must determine in each case whether the outcome under review meets acceptable legal standards.

*NLRB v. Amalgamated Clothing Workers of Am., AFL-CIO, Local 990*, 430 F.2d 966, 972 (5th Cir. 1970).  This makes clear that, since the inception of "affirmance without opinion" rules, this Court has never intended this procedural mechanism as a means to shirk its obligation to fully and fairly review legal issues.

To this end, this Court also recognized:

> A most important function is the writing of opinions. Opinions are to serve a number of purposes at least two of which are highly significant.  One is that ***an articulated discussion of the facts, legal, factual, or both, which lead the Court to one rather than another result, gives strength to the system, and reduces, if not eliminates, the easy temptation or tendency to ill-considered or even***

15

> *arbitrary action by those with the awesome power of almost final review*. The second, of course, is that the very discursive statement of these articulated reasons is the thing out of which law – and particularly Judge-made law – grows. *It is an essential part of the process of the creation of principles on which predictions can be fairly forecast as a basis for predictions can fairly be forecast as a basis for conduct, accountability, or the like*. All Judges know that in some cases this latter factor may almost completely transcend the importance of the case which is the vehicle bringing the questions forward.

*Id. (emphasis supplied)*. Therefore, this Court "recognizes that it must – the word is must – never apply the Rule to avoid making a difficult or troublesome decision or to conceal divisive or disturbing issues. *Id.*

## II. Non-Deferential Review by this Court is Required

Final interpretation of statutory law is "the proper and peculiar province of the courts" under Article III of the Constitution. *Loper*, 603 U.S. at 384-385. In its earliest days, the Supreme held "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Id.* at 385 (quoting *Marbury*, 1 Cranch at 177). This has remained true ever since then. *Id.* at 385-386.

In *Hudson Inst. of Process Research, Inc.*, this Court recognized that, when faced with a challenge to a Board decision or action, "the role of the reviewing court…is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 700 (*quoting Loper*, 603 U.S. at 371). Three of this Court's sister circuits have reached the same conclusion. *Garten*

*Trucking LC v. NLRB*, 139 F.4th 269, 276 (4th Cir. 2025) (quotations omitted and emphasis in original); ("the *interpretation* of a statute like the NLRA is exclusively a judicial function" and courts "afford the NLRB's interpretation deference only to the extent that [it] has the power to persuade"); *3484 Inc. v. NLRB*, 137 F.4th 1093, 1103-1104 (10th Cir. 2025) (citing 5 *U.S.C.* § 706 and *Rieth-Riley Constr. Co., Inc. v. NLRB*, 114 F.4th 519, 528-529 (6th Cir. 2024) (because "[c]ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority" and "may not defer to an agency interpretation of the law simply because a statute is ambiguous" therefore, "deference is no longer owed"); *see further NLRB v. Starbucks Corp.*, No. 23-1767, 2025 WL 3089798, at *9-19 (6th Cir. Nov. 5, 2025) (providing a thorough, well-reasoned dissection of the Board's improper interpretation and application of 29 *U.S.C.* § 160(c)).

We also ask that this Court note that two of its sister circuits have declined to decide whether Board decisions are subject to proper, non-deferential review, but have not foreclosed their future consideration. *Home Depot, U.S.A., Inc. v. NLRB*, Nos. 24-1406 & 24-1513, 2025 WL 3099879, at *7 (6th Cir. Nov. 6, 2025); *Dist. Hosp. Partners, L.P. v. NLRB*, 141 F.4th 1279, 1289 n. 2 (D.C. Cir. 2025). A second sister circuit first declined to reach the issue and then acknowledged the Supreme Court "held that federal courts must independently interpret statutory text, although it found it 'helpful to begin by considering the evolution of the Board's analysis' of

17

the issue at hand. *Miller Plastic Prods., Inc. v. NLRB*, 141 F.4th 492, 503 (3rd Cir. 2025); *Alaris Health at Blvd. E. v. NLRB*, 123 F.4th 107, 121 (3d Cir. 2024). The Ninth Circuit denies that there is a relationship between statutory interpretation and the Board's authority to award remedies. *Int'l Union of Operating Eng'rs, Stationary Eng'rs, Local 39 v. NLRB*, 127 F.4th 58, 84 n. 14 (9th Cir. 2025) (amd. and superseded on denial of rehearing en banc) 155 F.4th 1023 (9th Cir. 2025); *but see* 29 *U.S.C.* § 160(c) (express statutory terms empowering the Board, upon finding an unfair labor practice has been committed, "to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter").

This emerging body of law—particularly a plain, common-sense reading of the Supreme Court's holding and this Court's prior decisions on the issue—makes clear that there must be a reasoned evaluation of how the Board interprets and applies the Act. The panel's decision does not indicate that this has occurred. To the contrary, the panel's decision abrogates its responsibility to provide a clear, reasoned evaluation of critical legal analysis and issues under the Act. *Loper* is one of the most significant cases of the last one hundred years in administrative law. For the panel's decision not to even address, and frankly, side-step the impact of the application of *Loper* in this matter is inexplicable. Accordingly, it is respectfully

submitted that *en banc* review is necessary to ensure that the issues underlying the

Board's decisions receive a fair and full review.

## III.    <u>The Relevant Legal Questions</u>

## A.    <u>Supervisory Status Under Section 2(11) of the Act</u>

Section 2(11) of the Act, 29 *U.S.C.* § 152(11), exists to avoid the possibility

that "fraternal union feelings" will impair a supervisor's ability to apply employer

policy to subordinates in accordance with the employer's best interest.  *Beasley v.*

*Food Fair of N.C.*, 416 U.S. 653, 660 (1974).  ***This Court*** has recognized that the

Judiciary does "not simply defer to an agency's interpretation" and an agency cannot

respond to judicial review by falling back on a claim of deference as "special

justification" when the interpretation and application of Section 2(11) is at issue.

*Hudson Inst. of Process Research, Inc.*, 117 F.4th at 700. This is because the

discretionary authority afforded by the Act makes the role of the reviewing court "to

independently interpret the statute and effectuate the will of Congress, subject to

constitutional limits." *Id.*

Under Section 2(11), a "supervisor" is:

> [A]ny individual having authority, in the interest of the
> employer to hire, transfer, suspend, layoff, recall, promote,
> discharge, assign, reward, *or* discipline other employees,
> *or* responsibly to direct them, *or* adjust their grievances,
> *or* effectively to recommend such action, if in connection
> with the foregoing exercise of authority is not merely
> routine or clerical in nature, but requires the use of
> independent judgment.

19

29 *U.S.C.* § 152(11) *(emphasis supplied)*; *Hudson Inst. of Process Research, Inc.*, 1174 F.4th at 700 ("[s]upervisors are not 'employees' under the NLRA and are therefore not entitled to collective bargaining rights").

A three-part test, derived from Section 2(11), determines supervisory status and individuals are supervisors if: (a) they hold the authority to engage in any 1 of the 12 listed supervisory functions; (b) their exercise of authority is not of merely routine or clerical nature but requires the use of independent judgment; and (c) their authority is held in the interest of the employer. *NLRB v. Ky. River Cmty. Care, Inc.*, 532 U.S. 706, 712-713 (2001).

The Board itself uses a common-sense definition of "independent" and "judgment" under this standard, which respectively mean "not subject to control by others" and "the action of judging; the mental or intellectual process of forming an opinion or evaluation by discerning or comparing." *Oakwood Healthcare, Inc.*, 348 NLRB 686, 692 (NLRB 2006); *see Entergy Miss., Inc. v. NLRB*, 810 F.3d 287, 293 (5th Cir. 2015) (this Court recognizes the *Oakwood* standard). Independent judgment is a "spectrum between the extremes of completely free actions and completely controlled ones," and the "degree of independence necessary to constitute a judgment under the Act lies somewhere between these extremes." *Id.* at 693. Or, more succinctly, a determination of independent judgment is a legal determination that requires the interpretation and application of the Act. *See Int'l*

*Brotherhood of Elec. Workers v. NLRB*, 973 F.3d 451, 458 (5th Cir. 2020) (citing *Ky. River*, 532 U.S. at 713 (the Board itself acknowledges "the term 'independent judgment' is 'ambiguous as to the *degree* of discretion required for supervisory status") *see further Loper*, 600 U.S. at 385 (final "interpretations of the laws" is "the proper and peculiar province of the courts" because "steady, upright and impartial administration of the law" depends upon an exercise of judgment unimpaired by the influence of political appointees).

There is no indication that – at **any** point during the history of this matter – there has been any attempt to meaningfully review the RD's interpretation and application of Section 2(11) of the Act. As is made clear by **this Court's** recent decision in *Hudson Inst. of Process Research*, this is intolerable.

The employer in *Hudson* used a project management system to "identify the skills of [an employee] and likewise identify a project's difficulty" to make work assignments. *Id.* at 701. The "Team Leaders" in *Hudson* "still *possessed* the authority to assign work" and had the "ability to reassign…or override the assignment generated by the system. *Id.* at 702. *(emphasis in original)*. This Court thus faulted the Board for its interpretation and application of Section 2(11) of the Act because it conflated "'having authority,' as required by the NLRA, with 'exercising authority,' which the statute does not require." *Id.* at 701.

The RD and then the Board made the ***exact same error here*** by substantially misrepresenting uncontroverted evidence regarding the authority SLs hold. [ROA.108-109, 101:25-4; ROA.109, 102:5-13; ROA.143-144, 137:21-138:1; ROA.110-11, 103:102-104:4; ROA.146-147, 139:6-140:8; ROA. 111, 104:16-18; ROA.140-141, 133:23-134:15; ROA.135:11-21; ROA.112-113, 105:13:106:6; ROA.119, 112:5-13; ROA.126-127; 119:7-14, 119:19-120:11; ROA.113, 106:10-18; ROA.115-116, 108:1-6, 109:9-13; ROA.118-119, 111:17-112:1, ROA.120, 113:20-23; ROA.116-117, 109:18-110:6; ROA.147-148, 140:21-141:5; ROA.120-122, 113:24-114:4, 114:16-115:12; ROA.124-125, 117:6-18, 117:23-118:6-16; ROA.127, 120:15-25; ROA.136-137, 129:19-130:16; ROA.138, 131:17-23; ROA.137-138, 130:17-131:16; ROA.33, 26:2-11; ROA.59, 52:8-22; ROA.67-68, 60:19-61:25; ROA.112-113, 105:13-106:6; ROA.113, 106:10-18; ROA.119, 112:5-13; ROA.118-119, 111:17-112:1; ROA.120, 113:20-23].

Therefore, a fair, full, and non-deferential review as to the Board's conduct is necessary.

## B. The Failure to Investigate Supervisory Taint

Until the Board issued its decision in *Georgia Craft Co.*, 120 NLRB 806 (NLRB 1958), in 1958, regions entertained supervisory taint allegations through representation case hearings. *See Desilu Productions, Inc.*, 106 NLRB 179, 182 (NLRB 1953) (RC petition dismissed because head writer and producer for 'I Love

Lucy' television show tainted union's showing of interest). Despite reversing precedent, *Georgia Craft* provides no explanation as to **why** parties could not litigate supervisory taint during representation case proceedings. The Board's refusal to provide an explanation has been exacerbated by a decades-long practice of preventing employers from litigating supervisory taint. *See River City Elevator Co., Inc.*, 339 NLRB 616 (NLRB 2003); *A.B.C. Liquors, Inc.*, 227 NLRB 1582, 1585 (NLRB 1977); *Northeastern Univ.*, 218 NLRB 247 (NLRB 1975).

Nexstar respectfully submits that this case illustrates why the Board should abandon its flawed practice and allow parties to litigate supervisory taint during representation proceedings, consistent with *Desilu*. Preventing parties from litigating supervisory taint substantially prejudices employers and violates their right to due process and equal protection. In the American legal system, it is axiomatic that sunlight is the best disinfectant and preventing fair consideration of facts offends any notion of fairness, justice, or logic. *See Buckley v. Valeo*, 424 U.S. 1, 67 (1976) (with regard to "full disclosure during an election campaign…[p]ublicity is justly commended as a remedy for social and industrial diseases…[s]unlight is said to be the best of disinfectants…[and] [e]lectric light the most efficient policeman").

1.      **Prohibiting Litigation of Supervisory Taint Violates Due Process**

"Administrative agencies 'must accredit themselves by acting in accordance with the cherished judicial tradition embodying the basic concepts of fair play."

*Kinetica Partners, LLC v. U.S. Dep't of the Interior*, 505 F. Supp. 3d 653, 680 (S.D. Tex. 2020), *quoting Morgan v. U.S.*, 304 U.S. 1 (1938). "Under the Fifth Amendment, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Lion Elastomers, LLC v. NLRB*, 108 F.4th 252, 260 (5th Cir. 2024) (quotations omitted); *Kinetica*, 505 F. Supp. 3d at 680 (due process requires agencies "to provide both sides of a dispute – not just one – with notice and an opportunity to be heard"). More briefly, "[a] fair trial in a fair tribunal is a basic requirement of due process." *Withrow v. Larkin*, 421 U.S. 35, 46 (1976).

Parties are thus entitled to tribunals that are free of personal bias[2], which is true before administrative agencies as it is before the courts. *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 618 (2d Cir. 2004). Administrative agencies are not, or are not supposed to be, kangaroo courts, and parties have a constitutionally guaranteed right to participate fully and fairly in administrative proceedings before an agency action becomes final. *Zotos Int'l, Inc. v. Kennedy*, 460 F. Supp. 268, 278 (D.D.C. 1978). Agencies, therefore, cannot prohibit parties from putting on their case. *Id.*

Here, the Board refused to allow Nexstar to litigate supervisory taint. It is unclear why the Board does not want to establish a factual record to address supervisory taint, but it is axiomatic that refusing to hear supervisory taint issues is

substantially prejudicial to Nexstar.  This prohibition is effectively a statement that the Board will see no evil, hear no evil, and speak no evil when unions taint the electorate by using supervisory employees to politick their subordinates.

Supervisory taint in a showing of interest *is unlawful* and grounds for dismissing a petition.  By preventing employers from litigating supervisory taint, the Board does nothing other than give unions a free pass from legitimate scrutiny of their recognition petitions.  Perpetuating a practice that clearly favors unions strips employers of their right to due process and obfuscates the Board's responsibility to fairly enforce Section 7's guarantee of free exercise.

The prejudicial effect in this case is particularly egregious.  Mr. Cooper was both a statutory supervisor and an outspoken NABET supporter.  [ROA.422-423]. There is nothing abstract about Mr. Cooper's status as a supervisor because the limited evidence Nexstar was able to present to the Board demonstrated that Mr. Cooper relished his ability to exercise supervisory authority.  [ROA.61-62, 54:13-55:10; ROA.77-78, 70:4-71:14; ROA.80-84, 73:22-77:7; ROA.203-213; ROA.216; ROA.230-234; ROA.247; ROA.334-335; ROA.342-343; ROA.349; ROA.356; ROA.375].

Had the Board afforded Nexstar its right to due process and provided the opportunity to establish a full and fair record, evidence would have demonstrated: (a) on January 10, 2024, Mr. Cooper informed Mr. Longfellow that he was

responsible for filing the RC petition; (b) on that date, Mr. Cooper informed Mr. Longfellow he had coordinated with NABET to file the RC petition; and (c) Mr. Cooper stated that he organized "his guys" to sign NABET cards and that he was acting in the interest of "his guys" by coordinating with NABET because he believes his subordinates need more money and that coordinating with NABET will "win" more money; (d) on Election Day, Mr. Cooper enabled Messrs. Dunau and Maestas trespassing in the Denver Hub; and (e) Mr. Cooper urged other Nexstar employees to wear NABET t-shirts to "intimidate" their coworkers. [ROA.343-344; ROA.349; ROA.375].

Instead of hearing evidence and making a reasoned decision, the Board has stuck its head in the sand while exhorting, "take our word for it." Nexstar (or, for that matter, NABET) has been denied the opportunity to meaningfully participate in the legal determinations required by Section 2(11) during representation proceedings. *See Beasley*, 416 U.S. at 660 (Section 2(11) exists to avoid the possibility that "fraternal union feelings" will impair a supervisor's ability to properly supervise). The Board has demonstrated that it is unable, or more likely unwilling, to conduct a fair and thorough investigation of supervisory taint. The only remedy for the Board's hesitance to do its job is to allow the facts to be heard during representation proceedings.

**2. The Board's Rule Serves No Purpose Other Than to Prejudice Employers and Favor Labor Unions**

It is reasonable to assume that the Board will argue that its refusal to allow the litigation of supervisory taint somehow comports with due process and basic notions of fairness. To this, Nexstar respectfully urges this Court to ask the Board just one simple question: **Why not?** The Board and Nexstar are equal before this Court, and as the adage goes, "there's no harm in asking."

The Act does not prohibit litigation of supervisory taint; the Board manufactured the prohibition. *Desilu*, 106 NLRB at 182; *Georgia Craft Co.*, 120 NLRB at 806. It cannot be credibly claimed that litigating supervisory taint would have delayed or complicated the representation proceedings here because a hearing took place and was conducted in just one day. [ROA.7-163]. It certainly would not have interfered with NABET's ability to put on evidence. [ROA.7-163; ROA.154, 147:9-11 ("Q. All right. Union, do you wish to put any evidence on the record or call any witnesses? A. No. Thank you, though")].

**C. The Right to Refrain Under Section 7 of the Act**

Section 7 of the Act equally protects employees' right to join unions and their "right to refrain." 29 *U.S.C.* § 157; *NLRB v. Arkema, Inc.*, 710 F.3d 308, 316 (5th Cir. 2013) ("Harassment and intimidation are not protected union activities" and "it is preposterous that employees are incapable of organizing a union or exercising their other statutory rights" without resorting to intimidation tactics). Union

elections must therefore occur under laboratory conditions. *NLRB v. Handy Hardware Wholesale, Inc.*, 542 F.2d 935, 938 (5th Cir. 1976), *cert. denied* 431 U.S. 954 (1970).  Unlawful acts taint elections where those acts "interfere with the employees' exercise of free choice to such an extent that they materially affected the results of the election." *NLRB v. Sumter Plywood Corp.*, 535 F.2d 917, 920 (5th Cir. 1976) (quoting *NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 30 (5th Cir. 1969), *cert. denied* 429 U.S. 1092 (1977).

There must be a fair, full, and non-deferential review of the Board's interpretation and application of Section 7 for each of NABET's unlawful acts during the election.

*First*, NABET openly distributed a newsletter calling on employees as follows:

> **WEDNESDAYS & FRIDAYS** should be our "We <u>ARE</u> the Broadcast Union" days!  We all have staggered schedules; but spotty, one-at-a-time shirt coverage won't always do.  We need to be **seen**!  And wearing them all at once is certainly an **inspiring** (and intimidating) sight!

[ROA.472].  There is no requirement to "plumb the subconscious" of employees to determine whether coercive conduct objectively impairs how employees voted. *NLRB v. McCarty Farms, Inc.*, 24 F.3d 725, 730 (5th Cir. 1994).  Instead, the line is drawn where conduct "is intended to threaten or intimidate" rather than merely persuade." *Arkema, Inc.*, 710 F.3d at 317.  A fair, full, and non-deferential review

28

as to how the Board interpreted and applied Section 7 as to NABET's ***express call for intimidation*** is therefore necessary.

*Second*, between voting sessions on the election day, NABET's National Organizing Director, Bera Dunau, and President of NABET of Local 52, Gil Maestas, left the polling place. [ROA.451-452]. Initially, Messrs. Dunau and Maestas appeared to exit Nexstar's facility, but instead improperly entered an off-limits, key card access only, area of Nexstar's facility. [*Id.*]. Their unauthorized presence continued for at least five (5) minutes until it was discovered, and they were asked to leave the highly proprietary, restricted portion of Nexstar's facility where voting unit members were actively working at the time. [ROA. 423].

Unions do not have an open-ended right to access to employers' facilities and must meet the "burden of showing no other reasonable means of communicating [their] organizational messages to the employees exist[s]" or that "the employer's access rules discriminate against union solicitation." *Sears & Roebuck Co. v. San Diego Cty. District Council of Carpenters*, 436 U.S. 180, 205 (1978); *NLRB v. Babcock & Wilcox Co.*, 351 U.S. 105, 112 (1956).[3] A fair, full, and non-deferential review as to how the Board interpreted and applied Section 7 to unlawful conduct by Messrs. Dunau and Maestas is therefore necessary.

---

[3] Applicable Colorado law also treats conduct like that of Messrs. Dunau and Maestas as trespassing. *Wal-Mart Stores, Inc. v. United Food and Commercial Workers Int'l Union*, 382 P.3d 1249, 1255, 1258 (Colo. App. 2016).

*Third*, the Board undercut its own credibility here by refusing to conduct a post-election hearing, which would have allowed for full and fair litigation of NABET's unlawful actions. Post-election hearings are required as a matter of due process where, as Nexstar did here, objections to the conduct of an election raise "substantial and material factual issues" supported by specific offer of evidence which, if true, would be sufficient to set aside the election." *NLRB v. Hood Mfg. Co.*, 941 F.2d 325, 332 (5th Cir. 1994); *see NLRB v. Claxton Mfg. Co., Inc.*, 613 F.2d 1364, 1365 (5th Cir. 1980) ("due process requires the Board to grant a post-election hearing to a losing party who has supplied *prima facie* evidence raising substantial material issues that would warrant setting the election aside"). "***Whether the objecting party has made an adequate showing to require an evidentiary hearing is a question of law ultimately for [a] court to decide***." *Id.* Therefore, a fair, full, and non-deferential review as to the Board's interpretation and application of the Act is necessary.

D. **Violation of Section 8(a)(1) & (5) of the Act and Interpretation and Application of Section 8(d) of the Act**

Congress authorized judicial review of many Board orders, but did not authorize direct review of bargaining unit determination or election certifications. *Am. Fed. Labor v. NLRB*, 308 U.S. 401, 411 (1940). To obtain judicial review of an incorrect unit determination or election certification, which is the case here, employers must commit an unfair labor practice by refusing to bargain. *Pittsburgh*

30

*Plate Glass Co. v. NLRB*, 313 U.S. 146, 152 (1941).  If the Board, by interpreting and applying Section 8 of the Act, determines that an unfair labor practice has been committed, employers may then seek judicial review of unit determinations and election outcomes.  *Id.* at 152.  The courts then determine if the Board has properly interpreted and applied the act.  *See id.*

This straightforward legal reality was unnecessarily complicated by the Board and its former General Counsel. [ROA.496; ROA.572].  Former General Counsel willfully violated the Seventh Amendment of the Constitution[4] by seeking a remedy to "[m]ake the bargaining unit employees whole for the lost opportunity to engage in collective bargaining at the time and manner they were entitled to under the Act" and "an Order requiring [Nexstar] to make the bargaining unit employees whole for the opportunity to engage in collective bargaining at the time and manner they were entitled under the Act."  [ROA.496]. The Board then abdicated its responsibility to uphold and defend the Constitution by "sever[ing] the issue and retain[ing] it for further consideration to expedite the issuance of [its] decision regarding the remaining issues of this case." [ROA.572].

Former General Counsel's Board-enabled conduct violates the Seventh Amendment of the Constitution and the Act itself.  *Shepard v. NLRB*, 459 U.S. 344,

---

[4]     That Acting General Counsel has rescinded former General Counsel's decision to thumb her nose at the Constitution is of no moment because the Board has thus far failed to withdraw its request for legal remedies.

351 (1983) (the Board "is not a court, it is not even a labor court; it is an administrative agency charged by Congress with the enforcement and administration of federal laws"); *Int'l Union etc. v. Russell*, 356 U.S. 634, 641-643 (1958) (the Board cannot award "full compensatory damages for injuries caused by wrongful conduct"); *Republic Steel Corp. v. NLRB*, 311 U.S. 7, 11 (1940) (the Board was not given "virtually unlimited discretion to devise punitive measures…to prescribe penalties or fines which the Board may think would effectuate the policies of the Act"); *Consolidated Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 235-236 (1938) (the Board's authority "to order affirmative action does not go so far as to confer a punitive jurisdiction enabling the Board to inflict upon the employer any penalty it may choose because he is engaged in unfair labor practices").

The Seventh Amendment establishes: "In suits at common law, where the value in controversy exceeds twenty dollars, the right of trial by jury shall be preserved…" U.S. Const. amd. 7. "By 'common law,' the framers of the constitution meant…not merely suits which the common law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined." *Parsons v. Bedford, Breedlove & Robeson*, 28 U.S. 433, 446 (1830). *(emphasis in original)*. This standard applies to causes of action created by the congressional enactment of the statute. *Granfianciera, S.A. v. Nordberg*, 492 U.S. 33, 53 (1989).

Seeking money damages, as General Counsel did, is, of course, "the traditional form of relief offered in the courts of law." *Curtis v. Loether*, 415 U.S. 189, 196 (1974). In determining whether a claim is legal, "the remedy is all but dispositive." *S.E.C. v. Jarkesy*, 603 U.S. 109, 123 (2024); *see further Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 574-575 (1990, Brennan, J., concurring") ("[i]f the relief is legal in nature…the parties have a right to a trial by jury"). There is no Board mechanism that would allow Nexstar its constitutional right to a trial by jury on the General Counsel's legal claim for money damages. 29 *C.F.R.* § 101.10(a) ("A duly designated administrative law judge presides over the hearing"); 29 *C.F.R.* § 101.11(a) ("At the conclusion of the hearing the administrative law judge prepares a decision stating findings of fact and conclusions…and making recommendations as to action which should be taken in the case"); 29 *C.F.R.* 101.16(a)-(c) (where a Regional Director issues a "backpay specification," an administrative law judge alone determines the remedy).

Section 8(d) of the Act, 29 *U.S.C.* § 158, clearly limits the Board's role in policing collective bargaining as its plain text shows the Board has no authority to interfere with the substance of the bargaining process because the obligation to bargain "does not compel either party to agree to a proposal or require the making of a concession." *See* H.R. Rep. No. 245, 80th Cong., 1st Sess., p. 19 (explaining the Board had "gone very far, in the guise of determining whether or not employers had

33

bargained in good faith" by making itself "the judge of what concessions an employer must make"). Consistent with Congressional intent, the Supreme Court has held "it remains clear that ¶ 8(d) was an attempt by Congress to prevent the Board from controlling and settling the terms of collective bargaining agreements" and has consistently prevented the Board from testing the limits of Section 8(d). *NLRB v. Ins. Agents*, 361 U.S. 477, 487 (1960); *H.K. Porter Co., Inc. v. NLRB*, 396 U.S. 99, 103-104 (1970) (the "object of [the Act] was not to allow governmental regulation of the terms and conditions of employment…and it was never intended that the Government would…step in, become a party to the negotiations and impose its own views of a desirable settlement"); *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45 (1937) ("[t]he act does not compel agreements between employers and employees…[i]t does not compel any agreement whatever" because "[t]he theory of the act is that free opportunity for negotiations with accredited representatives of employees is likely to promote industrial peace and may bring about the adjustments which the act itself does not compel").

Since the effort to willfully violate the Seventh Amendment was not stopped by the Board and has not been rescinded in the underlying administration action, *en banc* review is necessary to, at an absolute minimum, ensure that agents of the federal government simply follow the law.

## CONCLUSION

Based on the foregoing recitation of facts and arguments of law, it is respectfully submitted that this Court should conduct *en banc* review, grant Nexstar's petition for review, overrule the Board's Orders, and remand this matter to the Board with express instruction to conduct a full and fair hearing on all disputed issues.

Respectfully submitted,

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
*Counsel for Petitioner*
*Nexstar Media Group, Inc. (Denver Hub)*

By: ____*/s/ Dean Kpere-Daibo*_____
Dean Kpere-Daibo
680 Craig Street, Suite 400
St. Louis, Missouri 63141
dkdaibo@constangy.com
Tel. (314) 338-3740

Dated: November 28, 2025

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that this document complies with the typeface, type-style, and length requirements established by Fifth Circuit Rule 32.1 and *Fed. R. App. P.* 32(a)(5)-(7) because it contains 5,707 words, excluding those exempted by *Fed. R. App. P.* 32(f), which are proportionally-spaced, 14-point Times New Roman font, and the word-processing software used was Microsoft Word for Office 365.

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
*Counsel for Petitioner*
*Nexstar Media Group, Inc. (Denver Hub)*

By: _____ ***/s/ Dean Kpere-Daibo***_____
Dean Kpere-Daibo
680 Craig Street, Suite 400
St. Louis, Missouri 63141
dkdaibo@constangy.com
Tel. (314) 338-3740

Dated:  November 28, 2025

**CERTIFICATE OF SERVICE**

I certify that on November 28, 2025, I electronically filed the foregoing *Petition for Rehearing En Banc of Nexstar Media Group Incorporated* was filed *via* ECF and thus served electronically on counsel of record to all parties. True and correct copies of same have been served electronically by email on the following:

Ruth E. Burdick, Deputy Associate General Counsel
David A. Seid, Attorney
Milakshmi Varuni Rajapakse, Attorney
National Labor Relations Board
1015 Half Street, SE
Washington, D.C. 20570
Email: Ruth.Burdick@nlrb.gov
    David.Seid@nlrb.gov
    Milakshmi.Rajapakse@nlrb.gov.

Judiann Chartier, Esq., General Counsel
Matthew G. Holder, Esq., Counsel
NABET-CWA, AFL-CIO
501 Third Street NW, Suite 1000
Washington, D.C. 20001
Email: jchartier@cwa-union.org
    mholder@cwa-union.org

*/s/ Dean Kpere-Daibo*
Dean Kpere-Daibo
*Counsel for Petitioner*
*Nexstar Media Group, Inc.*
*For Their Station Denver Hub*

37

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 15, 2025

Lyle W. Cayce
Clerk

———————————

No. 24-60658

———————————

NEXSTAR MEDIA, INCORPORATED, (DENVER HUB),

*Petitioner/Cross-Respondent*,

*versus*

NATIONAL LABOR RELATIONS BOARD,

*Respondent/Cross-Petitioner*.

———————————————————————————

Petition for Review from an Order of the
National Labor Relations Board
Agency No. 27-CA-342707

———————————————————————————

Before DENNIS, GRAVES, and DUNCAN, *Circuit Judges*.

PER CURIAM:*

ENFORCED. *See* 5TH CIR. R. 47.6.

———————————————————

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.